Elias **TSAKONITES**, Plaintiff,

v.

**TRANSPACIFIC CARRIERS CORP.** and **Hellenic Lines, Ltd., Defendants.**

Civ. No. 154–178.

United States District Court,
S. D. New York.

July 10, 1970.

Lebovici & Safir, New York City, for plaintiff.

Zock, Petrie, Sheneman & Reid, New York City, for defendants.

## MEMORANDUM

LASKER, District Judge.

Plaintiff moves, under provisions of Federal Rules of Civil Procedure 60(b) (5) and (6), to vacate the judgment of dismissal in this action dated March 23, 1965. These facts are undisputed: Plaintiff, a merchant seaman, brought suit against the defendants, pursuant to the Jones Act and the General Maritime Law, for personal injuries suffered in 1959. On March 4, 1965, Judge Cooper, to whom the case had been assigned for trial, rendered a decision finding that the plaintiff's contacts with the United States were insufficient to justify the application of the Jones Act or the General Maritime Law. Plaintiff appealed Judge Cooper's decision to the Court of Appeals, which, by a divided court, affirmed Judge Cooper's decision. On a petition for rehearing, the matter was heard by the Court of Appeals en banc. Again the Court of Appeals decided against plaintiff, with several judges voting in his favor. Thereafter plaintiff filed a petition for a writ of certiorari in the United States Supreme Court, and that application was denied on April 17, 1967.

On June 8, 1970, the United States Supreme Court handed down its opinion in Hellenic Lines Limited v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252. There the Supreme Court held that substantial continuing American contacts of a United States-based Greek shipping corporation (the same corporation, Hellenic Lines, Ltd., as is a defendant here) through a United States-domiciled majority stockholder outweighed the Greek flag, Greek nationality, and contractual contacts of a seaman, and permitted his maintenance of a Jones Act suit for injuries sustained in American waters. The first paragraph of the Court's opinion reads:

"This is a suit under the Jones Act by a seaman who was injured aboard the ship *Hellenic Hero* in the Port of New Orleans. The District Court, sitting without a jury, rendered judgment for the seaman, 273 F.Supp. [248] 249. The Court of Appeals affirmed, 412 F.2d 919. The case is here on petition for a writ of certiorari which we granted, 396 U.S. 1000, 90 S.Ct. 554, 24 L.Ed.2d 492, *in light of the conflict between the decision below and Tsakonites v. Transpacific Carriers Corp., 368 F.2d 426 in the Second Circuit.*" (Emphasis added.)

The *Tsakonites* case referred to in the Court's opinion is, of course, the very case in which the instant motion is made.

The *Rhoditis* case came to the Supreme Court from the Court of Appeals for the Fifth Circuit. The opinion of that court (412 F.2d 919) stated:

"We recognize that the Second Circuit has reached a contrary result on identical facts (the defendants there were, as here, corporations dominated by Pericles and the plaintiff was a Greek seaman injured in a United States port). Tsakonites v. Transpacific Carriers Corp., 2 Cir. 1966, 368 F.2d 426, cert. denied, 386 U.S. 1007, 87 S. Ct. 1348, 18 L.Ed.2d 434." (Id. at 925).

Plaintiff claims that it is clear, as it certainly seems to be from the face of the Supreme Court's opinion, that the Supreme Court has overruled the rationale on which the instant case was originally dismissed by Judge Cooper, who was then affirmed by the Court of Appeals for this Circuit. He contends that he should now be entitled to his day in court to establish that his case falls within the *Rhoditis* doctrine, as his allegations appear, on their face, to establish. He therefore asks that the previous judgment of dismissal of the suit be vacated under Rule 60(b) (5), (6), which provides that

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a

final judgment, order, or proceeding for the following reasons: * * * (5) the judgment * * * upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

Plaintiff cites as authority for the propriety of granting his application the decision of the Court of Appeals for this Circuit in Tarkington v. United States Lines Company, 222 F.2d 358 (2d Cir. 1955). There the District Judge had directed a verdict for the defendant pursuant to the law then in effect. Subsequently the Supreme Court in Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954), modified the rule upon which the original directed verdict had been based. After the time to appeal had expired the plaintiff in *Tarkington* moved for a new trial, which was denied. Upon appeal (Judge Frank writing the opinion), the Court of Appeals held:

"Since the doctrine of the Petterson case conflicts with the cases on which the trial judge relied in directing a verdict, the trial judge should have treated plaintiff's motion as a motion under Fed.Rules Civ.Proc. rule 60(b), 28 U.S.C.A., to correct a mistake of the court. Thus viewed, plaintiff's appeal is timely, for the motion was filed ten days after the decision of the Supreme Court in Petterson, and the notice of appeal filed within thirty days after the denial of that motion." 222 F.2d supra, at 360.

Defendants do not appear to quarrel with the accuracy of the factual history set forth above, or even to dispute the propriety of vacating the judgment if the recital above constituted the whole story. But the defendants bring to light the fact that the case has already been settled, and contend that the settlement stands as a bar to the granting of the order requested. The determination of the issue thus drawn depends on whether the settlement, the fact of which plaintiff does not deny, came as the result of a judgment or order of a court on a litigated basis and is thus res judicata, or whether the document which defendants claim to be a court order is in fact merely a release on the part of plaintiff. If the document be judged a release, then it does not stand as a bar to granting the order requested, but can, of course, be pleaded as a complete defense to the complaint if reinstated.

The document in question, signed by the parties April 11, 1968, and attached as Exhibit A to the affidavit of Edwin K. Reid sworn to June 19, 1970, fits neither the classic American form of judgment or release. Nevertheless, in my opinion its characteristics are predominantly those of a release and not of a judgment or order. First and most important, it is clear from examination of the document (which is entitled "Compromisory Agreement under Act 551" and not a judgment) that it does not result from a litigated determination of the merits of the case and does not purport to constitute a determination by the court or any authoritative source. While it is true that the agreement is specified to have been entered into "at the Magistrate's Court of the peace before me ALEXANDROS PILINOS, Magistrate for the Peace," and the document is signed not only by the parties but by the Magistrate and his Clerk, the relationship of the document to the court appears to be substantially the same as that in which an American court "so orders" a consent agreement. While undoubtedly there is judicial force to such an act, it does not constitute a judicial determination providing a basis for res judicata. Any doubt on this score should in any event be decided in favor of Tsakonites, a seaman, as a ward of the court. If the document be properly regarded as a release rather than a judgment, and the defendants, as they undoubtedly would, plead the re-

lease as a defense in reinstating litigation, Tsakonites would be entitled to prove, if he could, that the release was given for inadequate compensation, and under pressure or duress. Although the question is not before me and I make no finding in regard to it, it is to be observed that there is some showing in plaintiff's papers that the amount received on the settlement was disproportionately low to the claim presented.

The zealousness of the courts as to the necessity of assuring the validity of releases granted by seamen is made clear in Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). Congress has made its concern on this subject evident in the provisions of 46 U.S.C.A. § 597, which in relevant part provide

> "That notwithstanding any release signed by any seaman under section 644 of this title any court having jurisdiction may upon good cause shown set aside such release and take such action as justice shall require."

See also Judge Clark's opinion in The S. S. Standard, 103 F.2d 437 (2d Cir. 1939).

The New York cases cited in defendants' memorandum do not, as defendants claim, establish that "[t]he decision of the Magistrate's Court of the Peace, Athens, is conclusive on the merits of plaintiff's case," but only that *if* a valid judgment was rendered on the merits it will stand as a complete defense to plaintiff's claim. No one can argue with that proposition, but it is irrelevant since, in my view, the document to be considered here does not constitute a judgment.

I believe it to be in the interest of justice in the exceptional circumstances of this case to grant Tsakonites his day in court now that the Supreme Court appears to have overruled the previous decisions against him. Accordingly, the motion to vacate the judgment of March 23, 1965 is granted.

Settle order on notice.