No. 14301

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

———————————

CLAYTON R. FISCUS,

Plaintiff and Appellant,

-vs-

BEARTOOTH ELECTRIC COOPERATIVE, INC.,

Defendant and Respondent.

———————————

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson, Sinclair and Murphy, Billings,
Montana
Richard Anderson argued, Billings, Montana

For Respondent:

Hutton and Cromley, Billings, Montana
Brent Cromley argued, Billings, Montana

———————————

Submitted: December 12, 1978

Decided: FEB 2 8 1979

Filed: FEB 2 8 1979

Thomas & Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff-appellant, Clayton R. Fiscus, brings this matter to this Court, asking that, because the holding in Fiscus v. Beartooth Electric (1974), 164 Mont. 319, 522 P.2d 87, has been overruled by Piper v. Lockwood Water Users Ass'n (1978), _____ Mont. ___, 573 P.2d 646, 35 St.Rep. 9, 13, that he now be given his day in court. The immediate events giving rise to this appeal are as follows.

On June 10, 1974, pursuant to this Court's decision rendered in Fiscus v. Beartooth Electric, supra, the District Court entered summary judgment in favor of Beartooth and against Fiscus.

The case lay dormant on its thus dismissed status until February 3, 1978, when Fiscus moved to vacate the judgment and dismissal. Briefs were filed for and against the motion in the District Court, the Honorable Charles Luedke presiding. The court made no ruling on the motion, and on March 30, 1978, Fiscus' motion became "deemed denied" under Rule 59(d) and (g), M.R.Civ.P. Fiscus then filed this appeal.

For the fact situation, see Fiscus v. Beartooth Electric, supra.

The issue at this point is a narrow procedural one, namely, whether the doctrine of either "law of the case" or res judicata bars appellant from pursuing a claim against Beartooth Electric.

Appellant argues that he has never had his claim adjudicated and that he has never been in court to have such made, on the merits, the factual and the legal determinations of the case. He argues that he has been procedurally barred by order of this Court dated 1974.

Appellant acknowledges that "the law of the case" and res judicata are the legal principles generally applicable to bar those attempts by a dissatisfied litigant to reopen a matter which has been decided. He argues that all general rules, however, have their exceptions, and that under the circumstances of this case, they should be allowed under the exception of the general rule.

Black's Law Dictionary (Rev. 4th Ed., 1968), defines res judicata thus:

> "A matter adjudged; a thing judicially acted upon or decided; a thing or matter settled by judgment . . . Rule that final judgment or decree on merits by court of competent jurisdiction is conclusive of rights of parties or their privies in all later suits on points and matters determined in former suit . . . And to be applicable, requires identity in thing sued for as well as identity of cause of action, of persons and parties to action, and of quality in persons for or against whom claim is made . . . The sum and substance of the whole rule is that a matter once judicially decided is finally decided . . ."

In Western Montana Production Credit Ass'n v. Hydroponics, Inc. (1966), 147 Mont. 157, 161, 410 P.2d 937, 939, this Court, citing Moore's Federal Practice, said:

> "'The term res judicata is often used to denote two things in respect to the effect of a valid, final judgment: (1) that such judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim or demand; and (2) that such a judgment constitutes an estoppel, between the same parties or those in privity with them, as to matters that were necessarily litigated and determined although the claim or demand in the subsequent action is different. Under the first proposition the judgment operates as a bar * * *. Under the second proposition the judgment prevents the parties from relitigating only those matters that were determined.' 1-B Moore F.P. 621-622, § 0.405.
>
> "The first proposition is properly called res judicata while the second is called collateral estoppel."

As to the concept "law of the case", Black's definition includes the following:

"The decision, judgment, opinion or rulings on former appeal or writ of error become 'law of the case.' . . .

"The doctrine expresses practice of courts generally to refuse to reopen what has been decided . . . [I]t expresses the rule that final judgment of highest court is final determination of parties' rights . . .

"The doctrine is generally deemed applicable whether former determination is right or wrong. . . . But some cases hold that doctrine is inapplicable where prior decision is unsound, . . . or incorrect principles were announced or mistake of fact was made on first appeal . . ."

"Law of the case" has been explained by the Montana Court thus:

"'The rule is well established and long adhered to in this state that where, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal; and this, although upon its subsequent consideration the Supreme Court may be clearly of opinion that the former decision is erroneous. * * * it is a final adjudication from the consequences of which this court may not depart, nor the parties relieve themselves (citing cases).' Carlson v. Northern Pac.R.Co., 86 Mont. 78, 281 Pac. 913, 914.

"'Whether the opinion is right or wrong, it is the law of the case, was binding upon the trial court, and is binding upon us.' Anderson v. Border, 87 Mont. 4, 285 Pac. 174, 176." Apple v. Edwards (1949), 123 Mont. 135, 139-40, 211 P.2d 138, 140.

In contravention of the rigid standards articulated above, appellant cites the court to Perkins v. Kramer (1948), 121 Mont. 595, 600, 198 P.2d 475, 477, for the following pertinent language:

"The doctrine of res judicata, if applicable, does not prevent the court from correcting manifest error in its former judgment. Thus in Cluff v. Day, 141 N.Y. 580, 36 N.E. 182, 183,

-4-

the court said: 'There is no iron rule which precludes a court from correcting a manifest error in its former judgment, or which requires it to adhere to an unsound declaration of the law. It may, for cogent reasons, reverse or qualify a prior decision, even in the same case. But the cases in which this will be done are exceptional, and the power should be sparingly exercised.'

"When the prior decision is by a divided court, as here, . . . the court will the more readily depart from it, if erroneous. [Citation omitted.]"

In Perkins, the defendants contended that the plaintiff was precluded from maintaining his action, because of the holding in a previous case, which was described as being "an appeal from the judgment entered in the trial court after reversal" by the state Supreme Court. 121 Mont. at 597-98, 198 P.2d at 476. The Court acknowledged that the question presented there was the same as that presented before, but said that it had not precluded plaintiff from relief in the earlier case. 121 Mont. at 598, 198 P.2d at 476.

Appellant also directs our attention to a recent case of this Court, State v. Zimmerman (1977), ___ Mont. ____, 573 P.2d 174, 34 St.Rep. 1561. We believe that he does so incorrectly because the above case is a criminal matter and the principles applying thereto cannot always be conveyed straight across the board and applied to a civil proceeding. The problem there involved related to double jeopardy, a legal concept decidedly applicable to criminal cases only. While we cited a number of civil cases in Zimmerman, in our brief discussion of the "law of the case", relying on Zimmerman is in this case ill-advised. The recitation in those cases concerning the application of the exception to the general rule is opposite to this case. The exception is that the general rule will not be applied in those cases where reversal was based on an unrelated matter. Here the

-5-

issue is not unrelated. Thus the exception should not apply.

We find that Perkins is controlling in this case and that the District Court did not err in its ruling.

Next appellant argues that his constitutional right of access to the courts has been denied him. 1889 Mont. Const., Art. III, § 6, in effect at the time that he suffered his injuries. However, he does not develop this claim with case law or other authority and we find no merit to it.

Recognizing that his position in this appeal is probably defective under the Montana law on the "rule of the case" appellant argues that under federal decisions interpreting Rule 60(b), which is identical to Montana's Rule 60(b), different solutions of the case could be arrived at. Appellant, in support of his argument, cites a number of federal cases, which we will discuss individually in this opinion.

Klapprott v. United States (1949), 335 U.S. 601, 69 S.Ct. 384, 93 L.ed. 266, is a naturalization case and does not in our opinion meet the situation here where an appellate court overruled a later decision. There the court simply held that the plaintiff had been so extraordinarily victimized by the government that the federal rule 60(b)(6) would be invoked to cure that outrage where the government had failed to provide evidence required in a matter of law in the denaturalization process. There is no question that the plaintiff came under and deserved to come under Rule 60(b)(6). This is not a case that supports the appellant's position here which is whether to change the decisional law several years after a final judgment was entered against him and whether this constitutes a prerequisite of "any other reason justifying release from judgment".

Appellant next cites Ackermann v. United States (1950), 340 U.S. 193, 71 S.Ct. 209, 95 L.ed. 207. This case like Klapprott stands for the position that only in an extraordinary case should Rule 60(b) be granted. There is considerable authority holding that when a decision is later overruled by a court, that it is not "extraordinary" as contemplated in Klapprott. We do not find that in the case cited, Ackermann, is authority for appellant's position.

The next case cited by appellant in support of his position is Tsakonites v. Transpacific Carriers Corp. (S.D. N.Y. 1970), 322 F.Supp. 722, which comes the closest to appellant's position here. However it is distinguishable in our opinion from the Montana "law of the case" doctrine because there never would have been a Tsakonites case except for the fact that sometimes various circuits have conflicting holdings as they relate to specific issues of law. It is in those situations that the United States Supreme Court is more willing and usually will grant certiorari for the purpose of resolving the conflict by announcing a final rule to be uniformly applied to all ten circuits. This, of course, is one of the distinctions between the federal system and our state judicial system in that there there are intermediate courts of appeal while here the Supreme Court is the court of appeals in the rulings in the District Courts. Here we have no intermediate courts of appeal and when this Court renders a decision on a legal issue, that is and should be the end of the matter.

In Tsakonites the appellant had attempted to go to the United States Supreme Court in 1967 following an adverse result in the District Court for the Fifth Circuit of the Court of Appeals. However, the United States Supreme Court

denied his application for certiorari and thus did not hear, consider and rule upon the issue which caused him to lose below, the issue there relating to whether his maritime employer had sufficient contacts with America to come under the Jones Act.

It was not until Hellenic Lines Ltd. v. Rhoditis (1970), 398 U.S. 306, 90 S.Ct. 1731, 26 L Ed 2d 252, reh. denied, 400 U.S. 856, that the Supreme Court ruled upon the very issue it had declined to issue in its earlier opinion in Tsakonites.

The critical factor distinguishing Tsakonites from the Hellenic Lines case and this appeal is that the United States Supreme Court did not overrule a previous decision of its own. It had not ruled as we have in this case, but chose three years after Tsakonites in the Hellenic Lines case to consider the matter and resolve the differences of the circuit courts on the issue that Tsakonites and Hellenic Lines had before them in 1967. This case, however, as it relates to the Supreme Court that issued it, is without any directive from other courts, as in the federal system. For that reason we think it is distinguishable.

Appellant next cites the Griffin v. State Board of Education (E.D. Va. 1969), 296 F.Supp. 1178, case, which involved the constitutionality of the Virginia tuition grant laws, a denial of the equal protection clause. This decision, we find, supports the respondent in this matter in view of the fact while there was a change in the decisional law it was made prospectively and operated to preserve the ruling in 1955 and the law of the case being applicable up through 1969.

Respondent cites a number of federal cases in support of its position, two of which we think are of import for discussion. Title v. United States (9th Cir. 1959), 263 F.2d 28, cert. denied 359 U.S. 989, reh. denied, 360 U.S. 914, a case where Mr. Title whose appeal had been dismissed in 1956 moved to reopen his case in 1958, and asked the court, as in this case, to invoke Rule 60 at the expense of the "law of the case". There the court said:

> "Appellant recognizes that there are reasons of public policy for assuring the finality of judgments, but suggests that under rule 60(b)(5), Fed.R.Civ.P., 28 U.S.C.A., a special rule should be adopted in denaturalization cases relaxing the strictness of the ordinary rule. In support of this, appellant refers to the language of the dissenting Justices in Ackermann v. United States, 1950, 340 U.S. 193, 202, 71 S.Ct. 209, 95 L.Ed. 270. We are, of course, bound by the majority opinion in Ackermann, just as we are in Zucca. Rule 60(b) was not intended to provide relief for error on the part of the court or to afford a substitute for appeal. [Citations omitted.] Nor is a change in the judicial view of applicable law after a final judgment sufficient basis for vacating such judgment entered before announcement of the change. [Citations omitted.]" 263 F.2d at 31.

This Ninth Circuit Court of Appeals case clearly recognizes that post-judgment change in decisional law affords no avenue for reopening judgments. It is a recognition of the "law of the case" doctrine which is the law in Montana.

The second case we consider that respondent cited is Lubben v. Selective Service System Local Bd. No. 27, (1st Cir. 1972), 453 F.2d 645. This case involved a draftee who had secured a permanent injunction against induction. After precedential support for the injunction was removed, the government moved for the dissolution of the injunction. The District Court provided relief for the government, but the First Circuit Court of Appeals reversed on the "law of the case" grounds. In so holding under Rule 60 it noted that it

-9-

would not allow the vacation of a judgment granting the injunction stating:

> "To hold otherwise would destroy the certainty which allows controversies to be deemed judicially concluded . . .
>
> "'It should be noted that while 60(b)(5) authorized relief from a judgment on the grounds that a prior judgment upon which it is <u>based</u> has been reversed or otherwise vacated, it does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.' 7 Moore's Federal Practice ¶60.26[3] at 325." 453 F.2d at 650. (Emphasis in original.)

These cases show that there is ample support in the federal courts that they feel bound by the "law of the case" and that when a decisional law change occurs, subsequent to final judgment in a particular case, the "law of the case" is that final judgment should not be altered.

The judgment of the District Court is affirmed and the appeal is dismissed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Honorable R. D. McPhillips,
District Judge, sitting in place
of Mr. Justice Sheehy.