No. 91-380

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

RAE JEAN KOCH, as next friend of JOHN KOCH,
a/k/a JOHN MINDT, a Minor,

Plaintiffs and Appellants,

-vs-

BILLINGS SCHOOL DISTRICT NO. 2,

Defendant and Respondent.

FILED

JUN 1 1 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Gary R. Thomas; Thomas Law Office, Red Lodge,
Montana

For Respondent:

Michael W. Tolstedt; Anderson, Brown, Gerbase,
Cebull, Fulton, Harman & Ross, Billings, Montana

Submitted: April 29, 1992

Decided: June 11, 1992

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the Thirteenth Judicial District Court, Yellowstone County, Montana, which granted summary judgment to the respondent. The action arose from a negligence claim involving a student who was injured while attempting a teacher-supervised weight lifting maneuver at his junior high school. The District Court denied appellant's motion for relief from judgment under Rule 60(b), M.R.Civ.P. We reverse.

We restate the issues presented by the parties as follows:

I. Whether the District Court properly granted summary judgment to the School District on the basis of immunity.

II. Whether the District Court properly denied the plaintiff's Motion for Relief from Judgment pursuant to Rule 60(b) of the Montana Rules of Civil Procedure.

In mid-October, 1985, John Koch (Koch), then fifteen years old, was injured while attending a physical education class at Castle Rock Junior High School. Koch's teacher, Fred Brautigan (Brautigan), instructed Koch to squat-press weights totalling 360 pounds. Koch apparently protested but was instructed to try lifting the weight. After attempting to stand from a squatting position with the 360 pounds on his shoulders, Koch could not sustain the weight and collapsed. The weight pinned Koch for several seconds before Brautigan could remove it. Koch allegedly suffered a bulged disc, lumbar sprain, spinal nerve compression and other related injuries, including a mental condition of depression.

2

Koch initiated suit against three defendants: 1) The Board of Trustees (the Board); 2) the teacher Brautigan; and 3) School District No. 2 (School District).

On April 12, 1989, the District Court granted partial summary judgment to the Board and Brautigan pursuant to § 2-9-305, MCA. The School District, the only remaining defendant, moved for summary judgment based on § 2-9-111, MCA (1989). Koch opposed this motion for summary judgment and moved for reconsideration of the previous partial summary judgment. On February 7, 1990, the District Court granted summary judgment to the School District based on Eccleston v. Third Judicial Dist. Court (1990), 240 Mont. 44, 783 P.2d 363. Koch did not appeal from either summary judgment.

Subsequently, this Court decided various cases addressing § 2-9-111, MCA, including Crowell v. School Dist. No. 7 (1991), 247 Mont. 38, 805 P.2d 522; and Hedges v. Swan (Mont. 1991), 812 P.2d 334, 48 St.Rep. 449. On March 15, 1991, Koch filed a motion for relief from judgment, which was deemed denied since the District Court did not act on the motion within forty-five days. Koch appealed to this Court on June 25, 1991, desiring relief from the order granting summary judgment, and a trial on the merits.

RELIEF UNDER RULE 60(b), M.R.Civ.P.

We first address the ability of a court to offer relief from judgment under Rule 60(b), M.R.Civ.P., which is nearly identical to the equivalent Federal rule, Rule 60(b), F.R.Civ.P.

3

The provisions of this rule must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of _all_ the facts.

Bankers Mortgage Co. v. United States (5th Cir. 1970), 423 F.2d 73, 77 (emphasis in original).

Rule 60(b), M.R.Civ.P., sets forth the reasons under which the "court may relieve a party or a party's legal representative from a final judgment, order, or proceeding."

Koch claims that subsections (5) and (6) of Rule 60(b) are applicable to the case at bar:

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; _or_ (6) any other reason justifying relief from the operation of the judgment.

Rule 60(b), M.R.Civ.P. (emphasis added).

A careful reading of the statute discloses the word "or" at the end of subsection (5) which we have emphasized. "[I]t is generally held that if a party seeks relief under any other subsection of Rule 60(b), it cannot also claim relief under 60(b)(6)." Libby Rod & Gun Club v. Moraski (D. Mont. 1981), 519 F.Supp. 643, 647. Accordingly, Koch erroneously attempted to qualify under both subsections. Koch's Rule 60(b) motion should have claimed that the motion could fall under either subsection (5) or (6), but not both, since the two are mutually exclusive.

APPLICABILITY OF RULE 60(b)(5)

4

Koch claims that subsection (5) of Rule 60(b) applies to the case at bar because of the change in law regarding immunity. This change is best explained by an overview of relevant case law and legislative amendments. In 1990, we held that a school district was immune from suit when a janitor failed to clear ice and snow from a gym stairway where a plaintiff slipped and sustained injuries. Eccleston v. Third Judicial Dist. Ct. (1989), 240 Mont 44, 783 P.2d 363. The question of whether the School District had insurance was discussed in Eccleston, 240 Mont. at 61, 783 P.2d at 373, Justice John C. Sheehy, in his dissent, noted:

> There is a sardonic element in this case. The real party in interest shouting "governmental immunity" is probably an insurer. It sold a policy to the school district, promising coverage for comprehensive liability. Because of this Court, the insurer was never at risk for any wrongful acts of the school district personnel outside of motor vehicles. Its premium is pure gravy. . . .

Then, In 1991, this Court held that a school district's immunity was waived by the existence of liability insurance, to the extent of such insurance. Crowell v. School Dist. No. 7, Gallatin Cty. (1991), 247 Mont. 38, 805 P.2d 522.

In the case at bar, the District Court relied on Eccleston when granting the School District's motion for summary judgment. Due to the state of the law at that time, Koch did not appeal. After our holding in Crowell, Koch identified the change in the status of immunity and applied for relief from judgment under Rule 60(b)(5), M.R.Civ.P.

Koch is correct in observing that a change has taken place in the area of immunity law, however this is not a valid reason under

5

which a Rule 60(b)(5) motion may be granted. We have previously said that a change in decisional law after final judgment, does not represent extraordinary circumstances under Rule 60(b) so as to allow reopening of that judgment. We have also held:

> In Fiscus II [Fiscus v. Beartooth Elec. Cooperative, Inc. (1979), 180 Mont. 434, 439, 591 P.2d 196, 199] this Court stated ". . . only in an extraordinary case should Rule 60(b) be granted. There is considerable authority holding that when a decision is later overruled by a court, that it is not 'extraordinary' . . ." 591 P.2d at 199 (citing cases). We went on to note:

> "'. . . that while 60(b)(5) authorized relief from a judgment on the grounds that a prior judgment upon which it is based has been reversed or otherwise vacated, it does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding' . . . . (citations omitted) . . . there is ample support in the federal courts . . . that when a decisional law change occurs, subsequent to final judgment in a particular case . . . final judgment should not be altered." 591 P.2d at 200.

State ex rel. Rhodes v. Dist. Ct. (1979), 183 Mont. 394, 396, 600 P.2d 182, 183 (emphasis added).

At first blush the meaning of the term "prior judgment" in Rule 60(b)(5) could lead one to conclude that if any case relied upon later was reversed or otherwise vacated, the rule would permit relief from judgment. According to the above quotes from Fiscus II and Rhodes, this is not what is meant by "prior judgment." "The 'prior judgment' clause is limited to cases in which the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel; it does not apply when . . . the prior judgment has been relied on merely as precedent." 3 J. Moore, Moore's Manual of Federal Practice and Procedure, Section

6

26.08, pp. 26-34, footnote 10 (1989).

> Reliance on a judgment in an unrelated case . . . does not make the original judgment vulnerable within the "prior judgment" clause of subsection 5. Lubben v. Selective Service System Local Board No. 27, supra, 453 F.2d at 650; see 11 C. Wright & A. Miller, supra § 2863, at 204 ("[t]his ground [subsection (5)] is limited to cases in which the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel. It does not apply merely because a case relied on as precedent . . . has since been reversed"); cf. Ackermann v. United States, supra, 340 U.S. at 197-99, 71 S.Ct. 209; Chicot County Drainage District v. Baxter State Bank, supra, 308 U.S. at 374-78, 60 S.Ct. 317.

Marshall v. Board of Ed., Bergenfield, N.J (3rd Cir. 1978), 575 F.2d 417, 424.

Since Eccleston and Crowell are unrelated to the case at bar, Koch's claim under Rule 60(b)(5), M.R.Civ.P., which relies on the change of law in those cases, fails.

We also mention that Koch cannot prevail by arguing a change in the law under the last phrase of subsection (5) which states that "it is no longer equitable that the judgment should have prospective application." In Libby Rod & Gun Club v. Moraski (D. Mont. 1981), 519 F.Supp. 643, 647, merely arguing that the law had changed did not result in relief from judgment under the last phrase of subsection (5), nor can it here.

APPLICABILITY OF RULE 60(b)(6)

Koch also claims that relief from judgment is possible under subsection (6) of Rule 60(b). Subsection (6), sometimes called the "other reason clause," is a residual clause in which the court can use its equitable power to achieve justice under an appropriate set

7

of circumstances.

> [T]he language of the "other reason" clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.

Klapprott v. United States (1949), 335 U.S. 601, 614-615, 69 S.Ct. 384, 390, 93 L.Ed 266, 277.

In Overbee v. Van Waters & Rogers (6th Cir. 1985), 765 F.2d 578, the Ohio Supreme Court essentially changed the effective date of a statutory change by the legislature regarding contributory and comparative negligence. The change took place close in time to the Overbee proceedings (judgment, first appeal and remand), which affected substantially the plaintiff's claims. The court granted relief under Rule 60(b)(6), F.R.Civ.P., on the grounds that the circumstances constituted extraordinary circumstances and because without it substantial justice would not be served.[1] Overbee, 765 F.2d at 580. The Overbee court held "that the mere showing of a change in the law is not enough to demonstrate such an extraordinary situation when the judgment has become final. . . .

---

[1] In Overbee, on June 20, 1980, the Ohio legislature changed relevant statutory provisions from contributory negligence to comparative negligence. After some confusion over whether the change applied to actions that accrued after June 20, 1980, or to actions that were actually tried after that date, the Ohio Supreme Court decided that the change only applied to causes of action accruing after June 20, 1980. Since the plaintiff's claim accrued prior to June 20, 1980, even though trial was held in 1981, the change was unhelpful to the plaintiff's action. Subsequently, the Ohio Supreme Court reversed itself and held that the change from contributory to comparative negligence was applicable to any actions that came to trial after June 20, 1980. These facts constituted "extraordinary circumstances."

8

However, we are of the opinion that the unique facts of this case compel the granting of the motion. . . ." _Overbee_, 765 F.2d at 580.

Similarly, extraordinary circumstances were identified in Adams v. Merrill Lynch Pierce Fenner & Smith (10th Cir. 1989), 888 F.2d 696. In _Adams_, after a dispute over an arbitration issue the district court granted Lynch's motion under Rule 60(b)(6). _Adams_, 888 F.2d at 702. The court said that "a change in relevant case law by the United States Supreme Court warrants relief under Rule 60(b)(6)." (Citing cases.) _Adams_, 888 F.2d at 702.

In _Klapprott_, a naturalization case, circumstances were such so as to justify granting a Rule 60(b)(6) motion since there would be a furtherance of justice. Klapprott v. United States (1949), 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed 266.

These cases are germane to the case at bar because they are examples of "extraordinary circumstances" warranting relief from judgment via subsection (6) of Rule 60(b), M.R.Civ.P. In addition to the relevancy of these cases, we also acknowledge and consider the insurance reference in Justice John C. Sheehy's dissent in _Eccleston_ which could be mistakenly interpreted. The mention of insurance in the dissent and no mention of it in the majority opinion could be misleading, inasmuch as such reference could be interpreted that insurance was a consideration in the case. It was not.

Therefore, with guidance from _Overbee_, _Adams_, and _Klapprott_, and after careful consideration of the facts and circumstances

9

present in the case at bar, we hold that relief from judgment under subsection (6) of Rule 60(b) is warranted. In arriving at this conclusion, we point out the discretion of the court in granting relief under Rule 60(b) as evidenced by the use of the word may; the court _may_ relieve a party from a final judgment, order or proceeding. Savarese v. Edrick Transfer & Storage, Inc. (9th Cir. 1975), 513 F.2d 140, 146. From the aforementioned cases, we conclude that due to facts and circumstances, and in the furtherance of justice, Koch's motion was proper under Rule 60(b)(6) and the District Court erred in not granting it. We again carefully emphasize the limited nature of this decision and it does not establish a general rule for reopening a final judgment merely because there has been a subsequent change in the law upon which that judgment was based. Only when extraordinary circumstances are found to exist, as in the present case, may Rule 60(b)(6), M.R.Civ.P., be used to modify a final judgment.

TIMELINESS OF MOTION UNDER RULE 60(b)

Another important requirement of Rule 60(b), M.R.Civ.P., is that the motion must be timely made. Rule 60(b) indicates that a motion based on subsections (1), (2) or (3) must be made within a structured time frame. However, the Rule makes no specific provision for the timely filing of a motion under the remaining subsections. Instead, a motion under the remaining subsections (4), (5) and (6) must be made "within a reasonable time." A reasonable time can only be determined when considering the facts

10

of each case. United States v. Holtzman (9th Cir. 1985), 762 F.2d 720, 725. We previously said that:

> Any time limitations that may be involved in this case require that a balance be struck between the public interest in putting an end to litigation at some point and the public interest in keeping its judicial system free from corruption. For this reason the timeliness of the motion to vacate must ultimately depend upon equitable principles and placed within the sound discretion of the court.

Selway v. Burns, Estate of Burles (1967), 150 Mont. 1, 10, 429 P.2d 640, 645.

The School District argues that since Koch filed his Rule 60(b) motion over a year after summary judgment was granted, it was not filed within a reasonable time. Respondent's argument is unpersuasive. Koch filed his Rule 60(b) motion on March 15, 1991, forty-eight days after our Crowell opinion, which changed the law in the immunity area particularly when liability insurance was involved. Under the circumstances, and in light of our discretion, we do not find the timing of Koch's motion to be unreasonable. Accordingly, Koch's motion was not only proper but also timely.

STATUTORY CHANGES IN THE AREA OF GOVERNMENTAL IMMUNITY

Absent from either the School District's or Koch's appellate briefs, but dispositive in this case, is the amended version of § 2-9-111, MCA. The amended statute essentially makes the parties' immunity arguments moot. The legislature amended the statute soon after our opinions of Crowell and Hedges, which, in essence, responded to our interpretation of § 2-9-111, MCA, as it existed at that time. The 1991 changes in the statute clarified legislative

11

intent and our interpretation changed accordingly as explained in Dagel v. City of Great Falls (Mont. 1991), 819 P.2d 186, 48 St.Rep. 919. The legislature deemed the statute retroactive to all cases not final by May 24, 1991. Dagel, 819 P.2d at 191, 48 St.Rep. at 922.

In the case at bar, the summary judgment granted in favor of the School District became final when Koch did not appeal within thirty days from the judgment. This was prior to the retroactive effective date of the amended statute which was May 24, 1991. However, according to our previous discussion of Rule 60(b)(6) herein, we have reopened the judgment which makes the status not final. Accordingly, the current, newly amended statute is now applicable, as interpreted in Dagel.

Dagel is particularly germane since it deals with the amended statute which is the primary focus of the case at bar. We recite the purpose of the amended statute in Dagel as:

> AN ACT CLARIFYING THAT STATUTORY LEGISLATIVE IMMUNITY EXTENDS ONLY TO LEGISLATIVE BODIES OF GOVERNMENTAL ENTITIES AND ONLY TO LEGISLATIVE ACTIONS TAKEN BY THOSE BODIES; CLARIFYING THAT GOVERNMENTAL ENTITIES ARE NOT IMMUNE UNDER THE LEGISLATIVE IMMUNITY STATUTE FOR NONLEGISLATIVE ACTIONS; CLARIFYING THAT THE ACQUISITION OF INSURANCE DOES NOT WAIVE IMMUNITY; AMENDING SECTION 2-9-111, MCA; AND PROVIDING AN IMMEDIATE EFFECTIVE DATE AND A RETROACTIVE APPLICABILITY DATE.

Dagel, 819 P.2d at 191, 48 St.Rep. at 921.

> Section 2-9-111, MCA (1991), significantly changed the statute and therefore modified the theories expressed in the various immunity cases as well as in Crowell with regard to insurance. First, under the new statute, a legislative body is not immune from the negligent acts of its employees. § 2-9-111(1)(c), MCA (1991). Second, the purchase of insurance does not waive immunity. § 2-9-111(4), MCA (1991).

12

Dagel, 819 P.2d at 191, 48 St.Rep. at 922.

According to Dagel the School District (the legislative body) is not immune for the negligent acts of its employees. Whether the teacher's acts amount to negligence in the case at bar is a question of fact which must be determined in a trial on the merits upon remand. Clearly, the teacher's acts of instructing Koch to squat-press 360 pounds of weight are not legislative acts and are not immune under the meaning of the current version of § 2-9-111, MCA.

Both parties also make much out the of the purchase of liability insurance because of our holding in Crowell where we said that the purchase of liability insurance should waive immunity to the extent of the insurance coverage. The new statute deals directly with the Crowell situation and states that "the acquisition of insurance coverage, including self-insurance or group self-insurance, by a governmental entity does not waive the immunity provided by this section." Section 2-9-111(4) MCA (1991). This provision effectively overrules the Crowell line of cases regarding liability insurance, although the Crowell decision does give an excellent chronological history of governmental immunity that should not go unnoticed.


FAILURE TO APPEAL

The School District argues that Koch voluntarily chose not to appeal and now, a year after final judgment, should not be granted another bite at the apple. Generally, failure to appeal for almost

13

any reason is fatal to a motion to reopen judgment under Rule 60(b). If allowed, it would in essence make a Rule 60(b) motion a substitute for appeal, which is an improper use of the motion. Donovan v. Graff (1991), 248 Mont. 21, 808 P.2d 491. In criticizing a party's failure to appeal the United States Supreme Court said:

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the Keilbar case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

Ackermann v. United States (1950), 340 U.S. 193, 198, 71 S.Ct. 209, 211-212, 95 L.Ed 208, 210-211.

Even so, failure to appeal may not be fatal. The United States Supreme Court acknowledged the importance of Ackermann but also said:

> Despite the relevant and persuasive force of Ackermann, however, we need not go so far here as to decide that when an appeal has been abandoned or not taken because of a clearly applicable adverse rule of law, relief under Rule 60 (b) is inflexibly to be withheld when there has later been a clear and authoritative change in governing law. . . .

Polites v. United States (1960), 364 U.S. 426, 433, 81 S.Ct. 202, 206, 5 L.Ed.2d 173, 177. The Ninth Circuit Court recently held, after considering individual case facts and after meeting the standards for relief under Rule 60(b)(6), that a failure to appeal did not bar relief under the rule. United States v. Wyle (9th Cir.

14

1989), 889 F.2d 242. We also note that Rule 60(b) (6) is not inflexible.

> [I]t ordinarily is not permissible to use this motion to remedy a failure to take an appeal. However this is not an inflexible rule and in unusual cases a party who has not taken an appeal may obtain relief on motion . . . [Courts] have acted on the premise that cases of extreme hardship or injustice may be brought within a more liberal dispensation than a literal reading of the rule would allow. . . .

Wright and Miller, <u>Federal Practice and Procedure</u>, Vol. 11, § 2864, pp. 214-215, 219-220. Accordingly, we find that Koch's failure to appeal is not fatal, and because of the non-final status of his case, due to our granting of his Rule 60(b)(6) motion, the current amended version of § 2-9-111, MCA, and law in <u>Dagel</u> is controlling.

## CONCLUSION

Because of the amended immunity statute and our foregoing analysis reversal is proper.

Therefore, we remand to the District Court for a trial on the merits with instructions to take specific notice of the amended version of the immunity statute, § 2-9-111, MCA, and the <u>Dagel</u> case.

_____
John Conwely Harrison
Justice

We concur:

_____
J. A. Turnage
Chief Justice

15

William E Hunter

R.C. McDonough

Terry Trieweiler

_____
Justices

Justice Karla M. Gray, dissenting.

I respectfully dissent from the opinion of the majority. I do not feel less sympathy than the majority does for this plaintiff who has gone without a remedy as a result of this Court's earlier immunity decisions. I, too, would like to "do justice" in this case, if it could be accomplished without upending the vital principle of finality of judgments. Unfortunately, I am unable to find, and the majority does not state, what "extraordinary circumstances" make Rule 60(b)(6)'s "other reason" clause applicable here under controlling precedent. As a result, I cannot agree with the majority's analysis or result.

The facts pertinent to the issue before us are few. Plaintiff brought suit against three defendants. Summary judgment was granted to two of the defendants in 1989 and to the defendant School District on February 7, 1990. The grant of summary judgment to the School District was based on this Court's 1990 Eccleston decision interpreting § 2-9-111, MCA. Plaintiff did not appeal.

On February 6, 1990, a summary judgment was entered in favor of another school district in a separate lawsuit, also on the basis of Eccleston. That case was appealed and resulted in this Court's Crowell decision on January 25, 1991. While not a retreat from the earlier immunity interpretation, we held in Crowell that insurance coverage waived the statutory immunity to the extent of the coverage.

Koch filed a motion for relief from judgment pursuant to Rule 60(b)(5) and (6), M.R.Civ.P., in March 1991; the motion was based

17

on the change in the law in Crowell. The motion was denied by operation of law and Koch appealed, seeking relief from the School District's February, 1990, summary judgment.

On appeal, Koch first argues that relief from the summary judgment is available under Rule 60(b)(5). This argument is premised on the change in the law from Eccleston to Crowell, together with the assertion that under the Rule it is no longer equitable to give Eccleston prospective application to this case. The majority correctly rejects the Rule 60(b)(5) argument, relying on Libby Rod & Gun Club.

Koch also asserts the availability of relief from judgment under the "other reason" clause contained in Rule 60(b)(6). This argument is also premised on the change in the decisional law. It includes allegations of reliance on the dissent in Eccleston, in which Justice Sheehy noted the "probability" that the real party in interest in Eccleston was an insurer, in deciding not to appeal.

In concluding that the District Court erred in denying appellant's Rule 60(b)(6) motion, the majority does not mention or address this Court's seminal and controlling case on Rule 60(b)(6), In re Marriage of Waters (1986), 223 Mont. 183, 724 P.2d 726. Instead, it relies on three easily distinguishable federal cases. The result is a flawed legal analysis which will cause enormous difficulties to parties litigant, the bench, the bar and this Court in the future.

Waters was based on a unique set of facts which made Rule 60(b)(6) relief appropriate. At the time of the initial hearing on

18

the dissolution of the Waters' marriage, Montana treated military pensions as a marital asset subject to equitable distribution. Before the decree was entered, however, the United States Supreme Court held that federal law precluded state courts from dividing military retirement pay pursuant to state marital asset distribution laws. Bound by the Supreme Court's decision, the district court concluded in the 1981 dissolution decree that Mr. Waters' military pension was not a marital asset. No appeal was taken. In 1983, Congress responded to the Supreme Court's decision by enacting the Uniformed Services Former Spouses' Protection Act (USFSPA); the USFSPA allowed state courts to treat military retirement pay as a marital asset in accordance with state law. The legislative history of the USFSPA indicated Congressional intent to remove the effects of the Supreme Court's decision entirely, including via retroactive applicability of the Act to the date of that decision. Relying on the USFSPA, Ms. Waters filed a Rule 60(b)(6) motion for relief from judgment. The district court granted the motion and this Court affirmed.

Our decision in Waters was carefully drawn. We noted that the Ackermann test required a party to demonstrate "extraordinary circumstances" justifying relief and concluded that Ms. Waters had met that burden. We noted that it was not the fact that Congress had essentially overridden the Supreme Court in enacting the USFSPA that made the situation unique; rather, it was Congress' specific intent to accomplish precisely what Ms. Waters was attempting to accomplish through her Rule 60(b)(6) motion that constituted

19

sufficient "extraordinary circumstances." In so concluding, we were careful to "emphasize the limited nature of this decision; it does not establish a general rule for reopening a final judgment merely because there has been a subsequent change in the law upon which that judgment was based."

In the case before us, it is the change in decisional law from Eccleston to Crowell which is the real basis for appellant's Rule 60(b)(6) motion and the majority's result. As such, that result is in direct derogation of the rule in Waters. Further, while appellant's asserted reliance on Justice Sheehy's dissent in Eccleston provides a convenient means to reach the desired end here, it is not and should not be seriously delineated as the basis for the majority's holding. Speculation as to various interpretations which could have been put on that dissent or on language in any opinion of this Court is an unending game, and should not be adopted by this Court as "good cause" for a party's decision not to take an appeal and later attempt to seek relief from a judgment. This is particularly so where, as in this case, there was no suggestion whatsoever in the dissent that the "sardonic element" that an insurer "probably" was the real party in interest was raised as an issue in the case. Finally, whatever interpretations may have been possible, one attorney did appeal an adverse summary judgment based on Eccleston, and that appeal resulted in our Crowell decision on which appellant now wishes to rely in breathing life back into a case long final. What we have here as a basis for relief from judgment, from a legal standpoint,

20

is a change in decisional law. Under Waters, that is not enough.

In addition, while I agree entirely with the statements of law and, indeed, the results in the three federal cases relied on by the majority, those cases are easily distinguishable from the present case. The majority relies first on Overbee which it asserts is germane to the case before us as an example of "extraordinary circumstances" justifying Rule 60(b)(6) relief. I agree that Overbee was such a case and that the circumstances in that case justified relief from the judgment therein; however, Overbee is not germane to the instant case.

In Overbee, the plaintiff appealed several issues to the Ohio Supreme Court, including whether the jury should have been instructed on comparative negligence. During the pendency of that appeal, but before oral argument, the Ohio Court decided a separate case in which it reached a result directly opposite of Overbee's argument on comparative negligence. As a result, Overbee conceded at oral argument that the court's very recent decision settled that issue. The court affirmed in part in Overbee's appeal, but reversed and remanded for an evidentiary hearing on another issue. During the period of remand, but before the evidentiary hearing ordered by the Ohio Supreme Court, that court reversed itself on the comparative negligence question; the reversal occurred within one year of the earlier decision. Plaintiff filed a Rule 60(b)(6) motion, the evidentiary hearing on remand was held, and the trial court then denied the motion for relief from the earlier judgment. The Sixth Circuit held that two factors established the "unique

21

facts" on which it reversed the denial of the Rule 60(b)(6) motion: first, that the judgment in the case was not final at the point in time that plaintiff filed the motion; and second, that if the Ohio Supreme Court had reached its ultimate (second) decision on the comparative negligence question during the pendency of plaintiff's first appeal, plaintiff clearly would have prevailed on the comparative negligence issue in the first appeal. Thus, extraordinary circumstances existed which, in the view of the Sixth Circuit, mandated Rule 60(b)(6) relief.

The facts in the case before us are not similar to those in Overbee which formed the specific basis for the Sixth Circuit's decision. Here, the judgment from which relief is now sought was final many months before our Crowell decision; importantly, and unlike the situation in Overbee, no appeal was taken from that judgment. In addition, the Ohio Supreme Court actually reversed itself on the comparative negligence issue which had been raised by Overbee during his first appeal and did so within one year, at a time when Overbee's case had not reached final judgment. In the case before us, this Court did not reverse Eccleston in deciding Crowell and Crowell was decided nearly a year after the judgment at issue became final.

The majority next quotes a portion of a statement by the Tenth Circuit in Adams for the proposition that "a change in relevant case law by the United States Supreme Court warrants relief under Rule 60(b)(6)." The majority's failure to quote the entirety of that statement by the Tenth Circuit belies the application of that

22

proposition to this case and makes clear how inapposite Adams is to the case at hand. The Tenth Circuit's full statement in Adams is "In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under Fed.R.Civ.P. 60(b)(6)." (Emphasis added.) The test for Rule 60(b)(6) relief in the Circuit Courts of Appeal based on a change in decisional law by the United States Supreme Court is not related in any way to the issue before this Court. This Court's test for applying that relief is contained in Waters, discussed above. That test is not met here and, as noted above, the majority does not even recognize the existence of Waters in its opinion.

The majority relies, finally, on Klapprott, a 1949 naturalization case. Again, the majority does not suggest that the facts in that case relate in any way to those before us; for that reason, I will not belabor the obvious. The majority uses Klapprott for the concept that Rule 60(b)(6) is available in the "furtherance of justice." Again, the majority ignores its own Waters rule in order to "do justice" in this case.

It is my view that "extraordinary circumstances" do not exist in this case to invoke Rule 60(b)(6) relief. This case involves a change in decisional law which is not sufficient under Waters to support relief from judgment under the "other reason" clause of Rule 60(b)(6). The majority having opened the door in Montana to the premise that motions for relief from judgment under Rule 60(b)(6) are now available to "do justice," with nothing more required, I do not look forward to the task of trying to keep that

23

premise contained or limited. The days of finality of judgments in Montana are gone.

I will comment only briefly on the majority's discussion of the statutory changes in the area of governmental immunity. The majority states that the 1991 amendments are "dispositive" and render the parties' arguments on immunity moot. The majority's statement is correct, but only because the majority itself has inappropriately breathed life back into a judgment which has been final for over two years. Absent that action, it is clear that the 1991 amendments would be inapplicable to this case by virtue of the legislature's clear and stated intent to make the amendments applicable only to those cases which were not final by May 24, 1991.

_____
Justice

Justice Fred J. Weber joins in the foregoing dissent of Justice Karla M. Gray.

_____
Justice

24

June 11, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gary R. Thomas
Thomas Law Office
P.O. Box 570
Red Lodge, MT 59068

Michael W. Tolstedt
Anderson, Brown, Gerbase, Cebull, Fulton, Harman & Ross
P.O. Drawer 849
Billings, MT 59103-0849

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy