**LIBBY ROD & GUN CLUB, et al., Plaintiffs,**

v.

**Leon K. MORASKI, et al., Defendants,**

**and**

**Western Environmental Trade Association of Montana, Intervenor.**

No. CV–78–40–M.

United States District Court,
D. Montana,
Missoula Division.

July 30, 1981.

James H. Goetz, Bozeman, Mont., for plaintiffs.

Shelton C. Williams of George, Williams & Benn, Missoula, Mont., Robert T. O'Leary, U. S. Attorney, Butte, Mont., for defendants.

Steven L. Herndon, Sandpoint, Idaho, Carl Davis of Schulz, Davis & Warren, Dillon, Mont., for intervenor.

## MEMORANDUM and ORDER

WILLIAM D. MURRAY, Senior District Judge.

### I. BACKGROUND

This is another in a continuing series of attempts by the U. S. Army Corps of Engineers (Corps) to proceed with construction of a reregulating dam some ten miles downstream from the main Libby Dam in northwestern Montana, as part of a project referred to as the "Libby Additional Units and Reregulating Dam" (LAURD) project. This court enjoined construction of LAURD in 1978, finding that the project had not been authorized by Congress and that the defendants had failed to comply with certain NEPA requirements.[1] The Court of Appeals, treating the appeal on the authorization issue as a final appeal on the merits, affirmed this court's finding that the reregulating dam had not been authorized by Congress, and reversed the injunction as applied to installation of four additional turbines in the main Libby Dam.[2] 594 F.2d

---

1. A discussion of LAURD and a history of this litigation can be found in this court's opinion, *Libby Rod & Gun Club v. Pateat*, at 457 F.Supp. 1177 (1978) and the opinion of the Ninth Circuit Court of Appeals, *Libby Rod & Gun Club v. Pateat*, reported at 594 F.2d 742 (1979).

2. The court recognized, as did this court, that installation of the additional turbines without the reregulating dam downstream does not make sense. 594 F.2d at 747. This is because utilization of the four additional turbines would result in serious river fluctuation problems which, without a reregulating dam, would wreak havoc downstream. The court stated, however, that "the decision whether to proceed with their installation in light of our holding as to the reregulation dam is one for the Corps and Congress, not for us." *Id.*

Congress is now considering the wisdom of installing the additional units. See the "Omnibus Reconciliation Act of 1981, Report of the Committee on the Budget, United States Senate, to accompany S. 1377, June 17, 1981." In that report it is made clear that the Senate has voted to allow the first of the four additional units to be installed, but has called for "immediate termination of work on the sixth, seventh and eighth installed units. These additional units were intended by the Corps to be used primarily in conjunction with a reregulating dam that has not been authorized by Congress." Omnibus Reconciliation Act at 409.

742, 747. The court found it unnecessary to reach the NEPA issues, leaving further determination of those issues to this court "when and if the reregulation dam is authorized. . . ." *Id.*

In the fall of 1980, this court again was compelled to enjoin the Corps from proceeding with activities in furtherance of its construction of the proposed—but unauthorized—reregulating dam. In September, 1980, the Corps undertook an exploratory drilling project in the vicinity of the reregulating dam. At a hearing on October 17, 1980, the court ordered that all drilling activities cease.

## II. *MOTION TO DISSOLVE THE INJUNCTION*

Defendants now ask this court to dissolve the injunction prohibiting construction of the reregulating dam, basing their motion on Rule 60(b), F.R.Civ.P., and the inherent power of the district courts to modify injunctions in light of changed circumstances. *U. S. v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). Defendants advance two arguments in support of their motion: First, that the deficiencies in the Environmental Impact Statement, upon which the court based its NEPA rulings, have been remedied; and second, that the determination that LAURD was not authorized by Congress is no longer valid because, according to a recent U. S. Supreme Court decision, the plaintiffs lacked standing to raise that issue. Both arguments must be rejected and the motion to dissolve denied.

The first argument advanced by defendants will not be considered. The court's determination on defendants' second argument makes any discussion of the NEPA issues unnecessary. Further consideration of the NEPA issues would be required only if Congress authorizes the dam, which it has not. See, 594 F.2d at 747.

Defendants' second argument involves the recent Supreme Court decision in *California v. Sierra Club,* —— U.S. ——, 101 S.Ct. 1775, 68 L.Ed.2d 1011 (1981). Defendants argue that were this action brought today, the *Sierra Club* decision would compel the court to rule that plaintiffs would not have standing to question whether LAURD had been authorized by Congress. Defendants therefore contend that they are entitled to relief from the injunction under Rule 60(b), F.R.Civ.P. There are three major reasons why this argument must be rejected: 1) *California v. Sierra Club,* —— U.S. ——, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981), is not directly controlling; 2) Even if it were, the determination by the Ninth Circuit Court of Appeals that the dam is not authorized by Congress, and its affirmance of the district court's determination that the plaintiffs had standing to raise that issue, are final judgments and stand as res judicata; and 3) defendants have failed to carry their burden of demonstrating any of the grounds for relief set forth in Rule 60(b)(5), F.R.Civ.P.

### A. *California v. Sierra Club is not controlling.*

The court in *California v. Sierra Club, Id.,* held that private parties have no private

This Act has passed the Senate and is pending before the House of Representatives.

The House of Representatives recently took similar action. See 127 Cong.Rec. H 4817–4818 (daily ed. July 23, 1981) wherein the following colloquy took place between Congressman Williams of Montana and Congressman Bevel, Chairman of the House Appropriations Subcommittee on Energy & Water Development:

*Rep. Williams*: To add these additional units without the reregulating dam, which Congress has refused to authorize, is unnecessary and wasteful. . . . Am I correct then in my understanding that the $5 million

which is being appropriated today is to be used only for the installation of one additional unit at Libby Dam, and not for any other facet of the Libby additional units and reregulating dam project?

*Rep. Bevel*: Yes, I can tell the gentleman from Montana that no funds in this legislation are to be applied to construction of the Libby reregulating dam or the additional units 6, 7 or 8.

This colloquy took place during debate on the Energy and Water Development Appropriations, 1982, HR 4144, which has passed the House.

right of action under Section 10 of the Rivers and Harbors Appropriations Act of 1899, 33 U.S.C. § 403, to question whether certain water projects have been authorized by Congress. Section 10 was not, however, relied on by this court or the appeals court to establish standing in this action. The question of standing was addressed partially under the rubric of *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and partially under 33 U.S.C. § 401. See, *Libby Rod & Gun Club v. Poteat,* 457 F.Supp. 1177, 1182 (D.Mont. 1978). Thus, while it is clear that the recent decision in *California v. Sierra Club, supra,* would probably affect plaintiffs' standing to maintain this action were it filed today, it is not entirely clear that the suit could not be maintained. Furthermore, as seen by the discussion in Parts II B and C below, whether or not *California v. Sierra Club* would be controlling on the issue of plaintiffs' standing is irrelevant.

### B. *Res Judicata.*

■ The final judgment on the merits entered by the Court of Appeals in *Libby Rod & Gun Club v. Poteat,* 594 F.2d 742 (9th Cir. 1979) established two things: First, that Congress had not authorized the reregulating dam; and second, that plaintiffs had standing to challenge construction of the dam. Neither of those rulings were appealed by defendants and now stand as res judicata to preclude defendants from relitigating them. See, *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

It is also clear that the "res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have . . . rested on a legal principle subsequently overruled in another case." *Federated Dept. Stores Inc. v. Moitie,* —— U.S. ——, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), (citations omitted). Such a ruling is based on the long-recognized principle that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the

contest, and that matters once tried shall be forever settled as between the parties." *Baldwin v. Traveling Men's Association,* 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931).

Defendants are bound by res judicata, both as to the authorization issue and as to plaintiffs' standing to raise that issue. They may not now avoid the effect of that final judgment by complaining that were the suit brought today, plaintiffs would not have standing. See, *Federated Dept. Stores v. Moitie, supra.*

Defendants argue that the res judicata effect of the final judgment in this case may be avoided simply by making a motion under Rule 60(b), F.R.Civ.P. Such an argument, particularly based only upon a purported change in the case law regarding plaintiffs' standing, is not persuasive. Nonetheless, Rule 60(b) does seem to contemplate that in certain cases a party may obtain relief from a final judgment or order. Given that the interaction between Rule 60(b) and well-established res judicata principles is unclear at best, the court will address the Rule 60(b) motion on its merits.

### C. *Defendants are not entitled to Rule 60(b) relief.*

There are several grounds for relief set out in Rule 60(b), three of which are arguably applicable here. Those are:

1) a prior judgment on which the present judgment was based has been reversed—Rule 60(b)(5);

2) it is no longer equitable that the judgment should have prospective application—Rule 60(b)(5); and

3) any other reason justifying relief—Rule 60(b)(6).

Defendants specifically argue only grounds 2) and 3) above. Yet their argument is really directed to the first ground—that a prior judgment upon which the judgment in this case was based has been reversed. Defendants argue that a change in the relevant decisional law is sufficient reason to modify or vacate an injunction, citing

three circuit court decisions[3] to support their argument.

### 1. *Reversal of prior judgment.*

 Defendants view of the controlling case law is erroneous. There is simply no question that a change in the decisional law is not grounds for vacating a final judgment entered on the merits. As stated in 7 *Moore's Federal Practice*, Para. 60.26[3] at 325:

> It should be noted that while 60(b)(5) authorizes relief from a judgment on the ground that the prior judgment upon which it is *based* has been reversed or otherwise vacated, it does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another unrelated proceeding. (Emphasis in original.)

See also, *Marshall v. Board of Ed., Bergenfield, N. J.*, 575 F.2d 417 (3rd Cir. 1978); *Coalition of Black Leadership v. Cianci*, 570 F.2d 12 (1st Cir. 1978); *DeFilippis v. United States*, 567 F.2d 341 (7th Cir. 1977); *Lubben v. Selective Service System*, 453 F.2d 645 (1st Cir. 1972); and *Title v. United States*, 263 F.2d 28 (9th Cir. 1959).

### 2. *Prospective application no longer equitable.*

In order to justify relief under the other portion of Rule 60(b)(5), defendants must demonstrate that "it is *no longer* equitable that the judgment should have prospective application." Rule 60(b)(5), F.R.Civ.P., (emphasis added). The rule assumes that the propriety of the injunction as issued has passed beyond debate and requires some change in conditions that make continued enforcement inequitable. Defendants general lament that plaintiffs would not have standing were the case brought today hardly satisfies the standard under Rule 60(b)(5). Indeed, "[n]othing less than a clear showing of grievous wrong evoked by

new and unforeseen conditions" is required for relief. *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932).

Defendants raise no arguments to demonstrate "grievous wrong." Rather, they merely argue over and over that the law has changed. A similar argument was raised and rejected in *DeFilippis v. United States*, 567 F.2d 341, 344 (7th Cir. 1977). The same result is required here.

### 3. *Any other reason justifying relief.*

The final ground upon which defendants seek relief is under Rule 60(b)(6)—"any other reason justifying relief." Again, however, defendants only point to a supposed change in case law. This is not sufficient to justify relief under Rule 60(b)(6). See *DeFilippis*, 567 F.2d at 343, n. 5; *Title v. United States*, 263 F.2d 28, 31 (9th Cir. 1959). Furthermore, it is generally held that if a party seeks relief under any other subsection of Rule 60(b), it cannot also claim relief under 60(b)(6). *DeFilippis, supra*, at 343; *Lubben v. Selective Service System*, 453 F.2d 645, 649 (1st Cir. 1972).

### III. *CONGRESSIONAL ACTION ON LAURD*

 There is no question that it is within the equitable powers of a court to modify injunctions in light of changed circumstances. *U. S. v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). Defendants, however, have failed to point out any equitable considerations in favor of their motion to dissolve the injunction at issue here. Nevertheless, the court will take this opportunity to discuss its belief that the equities weigh entirely against granting that motion.

 Plaintiffs correctly point out that were defendants to prevail on their motion to vacate the injunction, the result would be most anomalous. Were the injunction to be

---

**3.** *Elgin National Watch Co. v. Barrett*, 213 F.2d 776 (5th Cir. 1954); *City and County of Denver v. Denver Tramway Corp.*, 187 F.2d 410 (10th Cir. 1951); and *Coca Cola Bottling Co. v. Standard Bottling Co.*, 138 F.2d 788 (10th Cir. 1943).

It is odd that defendants could locate these rather obscure cases and yet completely fail to cite or discuss the controlling case law set out in the text, *infra*.

dissolved the Corps would be free to proceed with construction of the reregulating dam, in spite of findings by two courts and Congress that the dam is not authorized. Both the United States Senate and House of Representatives have spoken quite plainly that the reregulating dam is not authorized. See n. 2, *supra*.

In addition, it appears that the Corps, at least at the upper levels, clearly understands that the reregulating dam is not authorized by Congress. The following exchange between Senator Max Baucus of Montana and Maj. General E. R. Heiberg, III, Director of the United States Army Corps of Engineers, in a hearing before a Subcommittee of the Committee on Environment and Public Works, makes this apparent:

> Senator BAUCUS: I wonder if you, for the record, could tell me what the legal status of the Libby reregulating dam is at this point?
>
> General HEIBERG: The court made a ruling that we did need to have further authorization for the reregulation dam. We, the corps, do not agree with that, we felt we had that authorization expressed, however the Department of Justice did not choose to appeal that ruling, so we have made an effort to clean up the battlefield, if you will, and either get that authorization from this body or not get it. That is our status.
>
> Senator BAUCUS: The legal status today is that the reregulating dam is not authorized?
>
> General HEIBERG: That is the court ruling; yes, sir.
>
> Senator BAUCUS: And would it be fair to say that it is not authorized in the same way that a proposal to build a second Washington Monument is not authorized? That the corps would have to get congressional approval in the form of authorization in order to proceed with both the reregulating dam and, say, a second Washington Monument here on the Capitol Mall, is that correct?
>
> General HEIBERG: Speaking hypothetically, there is absolutely no basis for the second Washington Monument. We thought we had a basis for the reregulating dam, sir, but you are right, we feel at the present time the only way to clear this question up is to give us the authorization we need to settle the question for it, to seek and either get or not get authorization.
>
> Senator BAUCUS: That is, the corps could not proceed unless it received congressional authorization to proceed?
>
> General HEIBERG: Yes, sir.
>
> Senator BAUCUS: So we are clear on that point?
>
> General HEIBERG: Yes, sir.

"Fiscal Year 1982 Budget Review, Hearings Before the Committee on Environment and Public Works", United States Senate, 97th Cong. 1st Sess., February 25, 26 March 4, 5 and 6, 1981, at p. 578. See also, *Id.*, at 580, where General Heiberg states that "[t]he bottom line is that we feel we must have congressional authorization before we take any action on the rereg dam."

Given General Heiberg's understanding of the "bottom line", the Corps' action in seeking to have this court dissolve its injunction against work on the reregulating dam seems curious indeed. This action becomes more predictable, however, in light of the consistent course of conduct the Corps has followed over the last few years.

It is clear to the court that Congress has not and probably will not authorize construction of the reregulation dam, at least not at any time soon. Dissolving the injunction would allow the Corps to construct a reregulating dam that has not been authorized by Congress. Such action would fly in the face of two court decisions and would be contrary to Congress' belief that the reregulating dam is not authorized and its apparent wish that it stay that way.

Dissolving the injunction would also work a substantial injustice upon plaintiffs, who seek to avoid possibly serious and irreversible consequences which would occur if the dam were built. In the face of all of the countervailing considerations, there is simply no basis for this court to grant defendants' motion.

For all of the reasons set forth above,

IT IS ORDERED and this does order that defendants' motion to dissolve the injunction be and the same is hereby denied.