## In re BLINDER, ROBINSON & COMPANY, INC., Debtor.

Glen E. KELLER, Jr., Trustee for the liquidation of the business of Blinder, Robinson, & Company, Inc., Plaintiff/Appellee,

v.

Martin S. BLINDER, individually and as Trustee of the Blinder Trust, and Janet W. Blinder, individually and as Trustee of the Blinder Trust, Defendants/Appellants.

Civ. A. No. 92–K–2344.

United States District Court, D. Colorado.

Jan. 3, 1994.

**557**

ers") contest the bankruptcy court's November 5, 1992 order granting summary judgment in favor of Glen E. Keller, Jr., trustee for the estate of Blinder Robinson & Company, Inc. ("Trustee"), on his claims against the Blinders for turnover of estate property under 11 U.S.C. §§ 542 and 549. The Blinders argue that the bankruptcy court's ruling should be reversed because: (1) the court lacked subject matter jurisdiction, as the referral of this case to the bankruptcy court under the Securities Investor Protection Act (SIPA), 15 U.S.C. §§ 78aaa–78lll, is unconstitutionally overbroad, (2) the court improperly accorded preclusive effect to certain judgments entered in another adversary proceeding, (3) the court failed to consider the Blinders' defense under § 550(b) of the Bankruptcy Code, 11 U.S.C. § 550(b).[1] I am not persuaded by their arguments. Therefore, I affirm the bankruptcy court's judgment.

### I. *Facts.*

On March 30, 1992, the Trustee commenced an adversary proceeding against the Blinders, both individually and as trustees of the Blinder Trust. Martin Blinder is married to Janet Blinder and is the son of Meyer and Lillian Blinder, who are principals of the debtor. The Trustee also named other members of the Blinder family as defendants; however, these parties were either voluntarily dismissed, did not appeal or have reached settlement with the Trustee.

In his complaint, the Trustee alleged that on February 10, 1992, Lillian Blinder and the Lillian Blinder Trust transferred $400,000 to the Blinder Trust in violation of the bankruptcy court's orders restraining transfers of estate property. These orders were entered in another adversary proceeding brought by the Trustee, captioned *Keller v. Blinder (In re Blinder, Robinson & Co.)*, 135 B.R. 892 (D.Colo.1991) (the "Alter Ego Action"). Accordingly, the Trustee requested turnover of the funds as unauthorized post-petition transfers barred by § 549 of the Code and as property of the estate under § 542 of the Code. The Trustee also alleged that the

William A. Bianco, Richard Westfall, Tom McNamara, Davis, Graham & Stubbs, Steven Taffett, Law Office of Steven Taffet, Denver, CO, for plaintiff/appellee.

Marcia S. Krieger, Law Offices of Marcia S. Krieger, Englewood, CO, for defendants/appellants.

### MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this bankruptcy appeal, Martin S. and Janet W. Blinder (collectively, the "Blind-

---

1. The Blinders also argue that summary judgment was improper because the Trustee failed to authenticate certain documents and relied on inadmissible deposition testimony, and that the court erred in not dismissing the claims against them in their individual capacities with prejudice. I will not consider these arguments because they were not raised before the bankruptcy court. *See Brown Mackie College v. Graham,* 981 F.2d 1149, 1153 n. 7 (10th Cir.1992).

transfer was a fraudulent conveyance under state law and the Bankruptcy Code, but he later dismissed these claims after the Blinders deposited the disputed funds into the court's registry.

On June 1, 1992, the Blinders responded to the Trustee's complaint by moving to dismiss for lack of subject matter jurisdiction. The Blinders argued that the bankruptcy court's powers, as conferred by SIPA, were overbroad in that SIPA does not contemplate withdrawal of the reference from bankruptcy court to district court. On July 8, 1992, the bankruptcy court denied the motion, finding that referral of SIPA proceedings to the bankruptcy court was not unconstitutional. The Blinders then filed a motion for leave to appeal that ruling and a motion for stay pending appeal. The bankruptcy court denied the stay, and on August 31, 1992 I denied the motion for leave to appeal.

On August 6, 1992, the Trustee filed the motion for summary judgment at issue in this case. The Trustee argued that the undisputed facts established that the estate was entitled to the $400,000 transferred by the Lillian Blinder Trust to the Blinder Trust in February, 1992. He relied on, among other things, the following rulings by the bankruptcy court in the Alter Ego Action:

1) the January 10, 1992 judgment declaring that "Blinder Robinson was the alter ego and mere instrumentality of Defendants Meyer and Lillian Blinder" and ordering the couple to deliver to the Trustee "all of their individual and joint property, whether directly or indirectly owned and wherever located and by whomever held, including any property held in any trust for the benefit of either Meyer or Lillian Blinder";

2) the February 4, 1991 temporary restraining order enjoining Meyer and Lillian Blinder from transferring or removing from their present location any of their fixed assets including "all property of Lillian Blinder in which she has a legal or equitable interest including without limitation property held by the Lillian Blinder Trust"; and

3) the March 12, 1992 judgment holding that all of the individual and joint property

of Meyer and Lillian Blinder was property of the estate, to be held in *custodia legis,* and specifically including "all of the assets held in the Lillian Blinder Trust ... wherever located."

(R.Doc. 65). The Blinders opposed the motion and requested summary judgment in their favor, contending that the court should not give preclusive effect to the judgments entered in the Alter Ego Action because neither the Blinders nor the Lillian Blinder Trust were named as parties to that action, the conclusions therein were legal and not factual, and the judgments were entered on default and as a sanction for discovery abuses. In addition, they argued that the Trustee was not entitled to judgment as a matter of law because the assets of Meyer and Lillian Blinder should have been substantively consolidated with the bankruptcy proceedings and the Blinders were not initial transferees of the funds.

On November 5, 1992, the bankruptcy court granted the Trustee's motion, finding there were no material issues of disputed fact as to the $400,000 transfer. The court held that its January 10 judgment in the Alter Ego Action established that the assets of the Lillian Blinder Trust were estate property and that transfers from the trust had been prohibited by the bankruptcy court. Furthermore, it found no dispute that the Blinder Trust had received the transferred funds. It discounted the Blinders' contention that the judgment should not be given preclusive effect, ruling that they "cannot now relitigate that final determination of the court because they took the funds in question *subsequent* to this determination." (R.Doc. 96 at 2). It likewise dismissed as specious their contention that they were not bound by the judgment because they were not parties to the Alter Ego Action and that substantive consolidation was required. On November 17, 1992, it denied the Blinders' motion to reconsider and to alter or amend, in which the Blinders questioned the Trustee's standing to assert an alter ego claim, stating that "[a]ll the Defendants are attempting to do is collaterally attack a previous final judgment of this Court." The Blinders now appeal.

On an appeal from an order granting summary judgment, I must apply the same standards as the court below, reviewing its conclusions de novo. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if, viewing the record in the light most favorable to the opposing party, *see Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991), there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law, *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir. 1991).

## II. *Merits.*

### A. *Constitutionality of Referral of SIPA Cases to Bankruptcy Court.*

■ The Blinders first contend that the bankruptcy court erred in denying their motion to dismiss for lack of subject matter jurisdiction. They maintain that the reference of SIPA proceedings to the bankruptcy court under 15 U.S.C. § 78eee(b)(4) is unconstitutional because there is no provision for withdrawal of the reference to the district court, as required under the reasoning of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

Similar arguments against the constitutionality of the bankruptcy court's adjudication of claims in SIPA proceedings were recently rejected by the Tenth Circuit in *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.),* 4 F.3d 1556 (10th Cir.1993), *petition for cert. filed,* No. 93–956 (Dec. 16, 1993). There the appellants had argued that the bankruptcy court lacked jurisdiction over a trustee's preference action because SIPA proceedings are referred to the district court, not the bankruptcy court, under SIPA's jurisdictional scheme. *Id.* at 1563–64. The appellate court rejected this argument, noting that the referral of SIPA proceedings under 15 U.S.C. § 78eee(b)(4) was clearly intended "to authorize the removal of SIPA liquidation proceedings to the bankruptcy court." *Id.* at 1564. In so holding, the court noted that its conclusion was bolstered by the language of § 78fff(b),

which provides that "a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11." This provision indicates that Congress intended SIPA liquidation proceedings to be treated, in most important respects, identical to a traditional bankruptcy case under title 11.

*Id.*

Section 78fff(b) also effectively disposes of the Blinders' argument that withdrawal of the reference is not permitted under the existing SIPA jurisdictional scheme. Because SIPA liquidations are treated like bankruptcy proceedings, there is no reason why withdrawal of the reference would not occur in the appropriate circumstances. *See, e.g., SIPC v. Bevill, Bresler & Schulman, Inc.,* No. 85–1715(DRD), slip op. at 4 (D.N.J. May 9, 1985) (removing SIPA proceeding from bankruptcy court to district court). Furthermore, as noted above, the Blinders requested withdrawal of the reference in this case. That motion was denied not because it was jurisdictionally improper under SIPA, but because the Blinders were not entitled to a jury trial on the § 542 and § 549 claims asserted against them. *See* 146 B.R. 28, 30–31 (D.Colo.1992). Therefore, I conclude that SIPA's jurisdictional provisions are not unconstitutionally overbroad because withdrawal of the reference is contemplated in SIPA proceedings under the same circumstances as are appropriate in regular bankruptcy cases.

### B. *Preclusive Effect of Alter Ego Judgments.*

■ The Blinders' second general contention on appeal is that the bankruptcy court improperly gave preclusive effect to the January 10 judgment entered in the Alter Ego Action. Their arguments on this score are plentiful. They contend that the court in the Alter Ego Action did not actually determine that the assets of the Lillian Blinder Trust were estate property, that the January 10 judgment in that proceeding was not on the merits because it was entered on default and as a sanction for discovery abuses, that the

**560**

judgment was invalid because the Trustee had no standing to assert an alter ego claim, and that it was not binding on them or the Lillian Blinder Trust because they were not made parties to the Alter Ego Action. While I believe these arguments are legally and factually incorrect, the bankruptcy court's ruling giving preclusive effect to its earlier judgment in the Alter Ego Case does present some theoretical problems.

 As the Blinders correctly note, the doctrine of issue preclusion, or collateral estoppel, applies when the same issue is involved in two actions, and the issue to be precluded was actually litigated and decided on the merits in the first action. *See Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 686–87 (10th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). These requirements are met. First, although the Blinders repeatedly assert that the bankruptcy court did not actually determine that the assets of the Lillian Blinder Trust were property of the estate, a plain reading of the January 10 order and later rulings based on that order shows this to be untrue. They clearly reflect the bankruptcy court's conclusion that assets held in the Lillian Blinder Trust were part of the property to be turned over to the Trustee in the Alter Ego Action. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979) (approving of lower court's use of judicial notice of its own records when considering summary judgment motion, particularly when the earlier litigation is closely related to the case before it.)

 Second, the Blinders' contention that the January 10 judgment should not be given preclusive effect because it was entered upon default is similarly unpersuasive. Default judgments are not automatically excluded from preclusive application. Here, the default judgment and related orders were entered after Meyer and Lillian Blinder repeatedly failed to comply with discovery requests. In these circumstances, the court's rulings against them in the Alter Ego Action are entitled to preclusive effect. *See Goel v. Heller*, 667 F.Supp. 144, 150 (D.N.J. 1987).

On the other hand, a third requirement of the doctrine of issue preclusion, that the two actions be between the same parties or their privies, *see Murdock*, 975 F.2d at 688, is not met. While it may seem possible the Blinders were acting in concert with Meyer and Lillian Blinder in accepting the transferred funds, nothing was presented to the bankruptcy court to establish privity. For this reason, I have some initial difficulty with the bankruptcy court's conclusory statement that the January 10 judgment was "preclusive as to defendants herein, and they cannot now relitigate that final determination of the court because they took the funds in question subject to this determination."

The Trustee carefully glosses over this problem. Rather than argue issue preclusion, the Trustee contends that Blinders, as nonparties, may not seek to have the judgments declared void under Bankr.R. 9024 or Fed.R.Civ.P. 60(b). That may be true, but they still may be entitled to litigate whether the assets of the Lillian Blinder Trust are property of the estate even if the judgment cannot be given preclusive effect. Second, the Trustee relies, as did the bankruptcy court, on the *Restatement (Second) of Judgments* § 43 (1982), which provides that a judgment in an action to determine interests in property "[h]as preclusive effects upon a person who succeeds to the interest of a party to the same extent [as] upon the party himself." The problem with reliance on the *Restatement* principle of preclusion by succession is that it has been applied essentially to actions in rem or actions brought specifically for a determination of property rights. *See id.* comment a; *Southcenter Joint Venture v. National Democratic Policy Comm.*, 113 Wash.2d 413, 780 P.2d 1282, 1285 (1989). It is not clear that an alter ego action fits within the same category of cases. On the other hand, as one commentator has noted,

> There is no requirement that the proceeding be in the form of an in rem or quasi-in-rem action, even as to real property. Instead, primary guidance must be sought in the purpose of the action to determine property rights, enforce the claim that is later assigned, or establish the contract rights of a party. Few cases have tested

the limits of preclusion by succession in these terms, since most have involved prior actions that clearly were intended to resolve title to property or to enforce the very claim that has been assigned. In approaching less certain cases, substantial weight should be given to the reasonable expectations of the victor that a judgment would protect against relitigation by any future adversary. In some circumstances, it may be possible to consider the position of the transferee—if the post-judgment transaction does not involve matters that would put prudent people on guard against prior litigation, preclusion may be inappropriate.

18 Charles A. Wright et al., *Federal Practice and Procedure* § 4462 at 550–51 (1981) (footnotes omitted).

While the bankruptcy court did not discuss the above considerations before applying preclusion by succession, the balance tips in favor of the Trustee's expectations against relitigation of this issue. First, preclusion by succession is appropriate because the Blinder Trust received the $400,000 transfer on February 10, 1992, after the court had entered final judgment in the Alter Ego Action and after it had specifically restrained any transfers from the Lillian Blinder Trust. Second, the purpose of the Alter Ego Action was to determine which parties, the Trustee or Meyer and Lillian Blinder, were entitled to certain assets. Taking place in the context of an adversary proceeding in bankruptcy, the Trustee could reasonably expect that the court's ruling in the Alter Ego Action would protect the estate from future litigation by parties, such as the Blinders, who later asserted an interest in those assets. Finally, it would take a stretch of the imagination to hold that reasonable persons in the Blinders' position would not be put on guard that post-petition transfers from a debtor's principals might be subject to bankruptcy court limitations. The Blinders were clearly aware that Meyer and Lillian were operating under the bankruptcy court's restrictions when they loaned the couple $400,000 to cover their legal expenses. (*See* R.Doc. 88, Ex. A, ¶ 15, 16; *id.*, Ex. B, ¶ 13, 14.)

■ For these reasons the bankruptcy court properly held that its ruling in the Alter Ego Action had preclusive effect on the Blinders, even though they were non-parties. This also mandates the conclusion that the Blinders may not challenge the January 10 judgment as void for the Trustee's failure to obtain personal jurisdiction over the Lillian Blinder Trust, *see* 18 Charles A. Wright et. al., *supra* § 4430 at 291–94, or for his alleged lack of standing, *see id.* § 4428 at 282 ("it seems clear that federal court judgments are binding notwithstanding a simple lack of subject matter jurisdiction, without regard to whether the jurisdictional question was litigated"); *Libby Rod & Gun Club v. Moraski,* 519 F.Supp. 643, 646 (D.Mont.1991).

■ Alternatively, even if the January 10 judgment in the Alter Ego Action is not preclusive as to title to the assets of the Lillian Blinder Trust, I question whether the Blinders have properly raised a genuine issue of material fact in response to the Trustee's motion for summary judgment. The Trustee made out his prima facie case. It is undisputed that *Lillian Blinder* is the trustee of the Lillian Blinder Trust. Lillian Blinder has admitted that in her answer. (*Id.* Doc. 12, ¶ 7, 8.) The Blinders admit that they initially loaned Meyer and Lillian Blinder $400,000 from the Blinder Trust to cover the couple's legal fees. (*Id.*, Ex. A, ¶ 7, 8; *id.*, Ex. B, ¶ 5, 6.) Further, the deposition of Ms. Jane McKenzie submitted with the Trustee's motion clearly establishes that Lillian Blinder personally directed that $400,000 be withdrawn from the Lillian Blinder Trust to repay that debt. (*Id.* Doc. 65, Ex. C at 50.)

The only possible factual issue contested by the Blinders is whether Lillian Blinder is also the beneficiary of that trust, such that her equitable interest is subject to the judgments in the Alter Ego case. The Blinders have come forward with absolutely no evidence to controvert the only reasonable inference to be made on the above undisputed facts that Lillian Blinder was also the beneficiary of the Lillian Blinder Trust since, as trustee, she directed the transfers to be made for her own and her husband's personal benefit. For this reason as well, I affirm the bankruptcy court's ruling granting sum-

mary judgment for the Trustee on his claims under §§ 542 and 549. *See* Fed.R.Civ.P. 56(e); 10A Charles A. Wright et al., *supra*, § 2727 at 133–34 (despite rule that all doubts are resolved against summary judgment movant, opposing party must offer evidence in opposition to movant's motion when movant presents credible evidence which would entitle him to directed verdict if not controverted at trial).

### C. *Section 550(b) Defense.*

■ The Blinders' final argument is that the bankruptcy court erred by not adequately considering their affirmative defense under § 550(b) of the Code. They argue that, while the Trustee may recover postpetition transfers under § 549 of the Code from an initial transferee, under § 550(b) he may not recover from any immediate or mediate transferee of the initial transferee who takes for value, in good faith, and without knowledge of the avoidability of the transfer. Thus, the Blinders' § 550(b) defense depends on their contention that they were not the initial transferees of the Lillian Blinder Trust. *See First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir.1992) (initial transferee receives no protection from § 550(b)). They assert that Lillian Blinder transferred the funds out of the Lillian Blinder Trust to Boston Financial Data Services, the true initial transferee, which then transferred the funds to them. They further allege that they had no knowledge of any restrictions on the transfer and are innocent immediate transferees.

■ The uncontroverted deposition of Ms. McKenzie establishes that Boston Financial is not a transferee as that term has been construed by the courts. At a minimum, to be a transferee for the purposes of § 550, a party must have "dominion over the money or other asset [and] the right to put the money to one's own purposes." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988); *see also In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d at 722. Ms. McKenzie's deposition shows that Boston Financial merely follows the instructions of shareholders in transferring funds held in

the accounts it services. (*See* R.Doc. 65, Ex. C at 36–60, 63). Therefore, the Blinders were the initial transferees of the funds, not the immediate or mediate transferees of the initial transferee, and the bankruptcy court did not err in granting summary judgment in favor of the Trustee notwithstanding the Blinders' claim of a § 550(b) defense.

IT IS ORDERED THAT the bankruptcy court's judgment is AFFIRMED.